IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

| | | |
|---|---|---|
| JACQUELYN AVIS BETTS,<br>Plaintiff, | * * * * | |
| v. | * * | Civil Action No. 12-cv-3802-AW |
| MONTGOMERY COLLEGE, *et al.*,<br>Defendants. | * * * * | |

**MEMORANDUM OPINION**

Pending before the Court is Defendants' Motion to Dismiss Plaintiff's Amended Complaint. Doc. No. 28. The Court has reviewed the motion papers and concludes that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2011). For the reasons discussed below, Defendants' Motion will be GRANTED.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff in this matter is Jacquelyn Avis Betts, formerly employed by Defendant Montgomery College as a Media Technology Specialist. Defendants are Montgomery College, Montgomery College Board of Trustees, Montgomery County, and several employees of Montgomery College, including Vivian M. Lawyer, Sarah Miller Espinosa, Jacia T. Smith, Rowena D'Souza, Yanira Ruiz, Victoria Duggan, Patricia Holland, Douglas M. Griffith, Bernard Allen, Lee H. France, Maureen Elder, Wallace Knapp, and Lynda von Bargen. Plaintiff, who is proceeding *pro se* in this action, filed suit against Defendants on December 28, 2012, alleging a variety of claims related to her leave of absence in 2009 and eventual termination in 2010. Doc. No. 1. After Defendants answered the original Complaint, the Court granted Plaintiff's Motion for Leave to Amend her Complaint on May 10, 2013. *See* Doc. No. 24. Plaintiff's Amended

Complaint provides additional detail to her damages claims, Doc. No. 10-1, and appears to incorporate by reference the factual allegations of her original Complaint. In analyzing Defendants' Motion to Dismiss the Amended Complaint, the Court will consider Plaintiff's factual allegations from both documents, including the exhibits attached to the original Complaint.[1]

Plaintiff's dispute with Defendants appears to have its origin on June 15, 2009, when she submitted a "Self Appraisal" to Lee France, her supervisor at Montgomery College, as part of her 2009 Performance Review. Doc. No. 1 ¶ 7. Plaintiff, who was assigned to the east side of campus, stated in the Self Appraisal that she could perform better if she had better access to certain resources located on the west side of campus. *Id.* Plaintiff's July 16, 2009 Performance Review noted that one of her objectives for the following year was to relocate to the Health Science building on the west side of campus. *Id.*; Doc. No. 1-7 at 8. Plaintiff claims that France attempted to coerce her into agreeing with the Review and maintains that the relocation objective was placed in the Review to (1) "place me back with my resources to avoid a potential lawsuit for retaliation because I had been illegally separated from my resources for two years," and (2) "to set me up for a wrongful termination by putting a written command in place without the training prerequisite so that it could later be claimed that I was insubordinate for not relocating . . . ." Doc. No. 1 ¶ 7. Plaintiff alleges that the College denied her the requisite training because she might learn the secret that the College had been hiding, specifically, that its Smart Instructor workstations were not responsive despite the College's reputation as the most technologically advanced community college in the nation. *Id.* ¶¶ 7, 11; *see also* Doc. No. 1-6. Plaintiff claims that on August 13, 2009, she formally disagreed with the processing of her Performance Review. Doc. No. 1 ¶ 8. According to Plaintiff, Patricia Holland subsequently forged Sarah Miller

---

[1] Rule 10(c) of the Federal Rules of Civil Procedure provides that "[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." *See also Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (noting that a court may consider documents attached to the complaint in reviewing a motion to dismiss under Rule 12(b)(6)).

2

Espinosa's signature on her Performance Review, apparently as a means of concealing the "true motivation" for Plaintiff's ultimate termination. *Id.* ¶ 12.

On September 8, 2009, Plaintiff informed France and Rowena D'Souza that she would be taking medical leave. *Id.* ¶ 9. Plaintiff alleges that as of that date, the College had illegal policies which permitted placement of employees' medical histories in their personnel files. *Id.* She asserts that Vivian Lawyer, the Chief Human Resources Officer, illegally accessed Plaintiff's medical history, including the fact that Plaintiff had voluntarily seen a psychiatrist in the past, as a basis for her eventual termination. *Id.*

Plaintiff alleges that individual Defendants engaged in "evil and malicious plots" which would deprive her of her leave entitlement and set her up for wrongful termination. *Id.* ¶ 10. These actions included (1) padding her personnel file with false claims of behavioral problems; (2) inducing Plaintiff into violent outbursts which would appear to justify Defendants' request for a psychiatric examination; and (3) making life so unbearable that she would quit. Plaintiff cites a September 24, 2009 confrontation with France in which he argued and made accusations regarding Plaintiff's failure to relocate to the Health Science building. *Id.* Following this confrontation, Plaintiff e-mailed France on September 28, 2009 to address his accusations. *Id.*; Doc. No. 1-3. Plaintiff subsequently met with France and his supervisor, Campus IT Manager Bernard Allen, and during this meeting Plaintiff was "ambushed with lies and false accusations" which caused her to defecate on herself. Doc. No. 1 ¶ 10.

On September 30, 2009, Allen left a document on Plaintiff's desk which purported to be the minutes from the September 28 meeting. *Id.* That document recounted the issues discussed at the meeting and included several resolutions relating to Plaintiff's relocation, future training, and the poor communication between her and France. *See* Doc. No. 1-8. Plaintiff asserts that this document was forged and maintains that Allen attempted to coerce her into signing off on the

3

document. Doc. No. 1 ¶¶ 10, 12. Plaintiff also alleges that Allen posted accusations of her behavioral issues on the College's Media Resources Box, which could be viewed by numerous employees. *Id.* ¶ 10.

On or about September 28, 2009, Plaintiff sent Vivian Lawyer a letter regarding her supervisor. *Id.* ¶ 14. The College claims that this letter was dated October 7, 2009.[2] *Id.* Plaintiff does not attach the October 7 letter as an exhibit, but it is described in several of the exhibits attached to her pleadings. According to those exhibits, Plaintiff's letter stated that France "wanted to do [Plaintiff] harm; has an obsession to get her; and insinuated that he may attempt to murder her." Doc. No. 1-15. Plaintiff does not dispute in her pleadings or in her motion papers that this was the substance of the October 7 letter. Plaintiff also alleges that the letter "requested a transfer to another campus due to legitimate concerns about [her] safety." Doc. No. 1 ¶ 17.

Due to foot surgery, Plaintiff went on medical leave from Montgomery College beginning October 21, 2009. *Id.* ¶ 13. On November 13, 2009, Plaintiff received two letters from Lawyer. The first letter noted the serious yet unsubstantiated allegations Plaintiff made against France in her October 7 letter, and informed Plaintiff that an investigation by the Office of Human Resources would be required given the nature and severity of the allegations. Doc. No. 1-9. Lawyer explained that pursuant to the College's Policies and Procedures, Plaintiff would be required to visit a physician for an evaluation of her fitness for duty prior to returning to the workplace.[3] *Id.* The College also scheduled a meeting between Plaintiff and Director of

---

[2] Because the parties frequently refer to the letter as the October 7 letter in the motion papers and because the exhibits attached to Plaintiff's Amended Complaint refer to it as the October 7 letter, the Court will do the same. However, accepting that the letter was sent on September 28 would not alter the Court's analysis.

[3] The Procedure apparently relied upon by Lawyer provided: "Whenever it appears that a College employee has a physical or mental condition which adversely affects his or her competence or the well-being of either the public or other employees, or causes the employee to be absent from work excessively, the Director of Personnel may require the employee to discontinue work immediately and to be examined by the county health office or a duly licensed physician, who shall report his or her findings to the Director of Human Resources." Procedure 31105CP, Doc. No. 1-9 at 3.

Employee Engagement Sarah Miller Espinosa for December 2, 2009, and set up a medical appointment for Plaintiff with Dr. Susan Feister for December 3, 2009. *Id.* With respect to the medical appointment, Lawyer stated that Plaintiff would have to provide consent for release of the doctor's report to the College. *Id.* Lawyer's letter also advised Plaintiff that she could not return to work until College staff had met with her to discuss the matter in greater detail. *Id.* In the second letter dated November 13, 2009, Lawyer informed Plaintiff that she was to be placed on paid administrative leave effective the following day for unacceptable job performance and that she would remain on leave during the pendency of the investigation. *Id.*

On November 19, 2009, Lawyer sent another letter to Plaintiff stating that it superseded the November 13, 2009 letters due to certain errors. Doc. No. 1 ¶ 19; Doc. No. 1-18. The new letter noted that Plaintiff would be placed on paid administrative leave *following* the expiration of her medical leave. *Id.* The November 19 letter reiterated that the College would conduct an investigation and require Plaintiff to attend a medical appointment and consent to the release of information as part of the investigation related to her complaints about France. *Id.*

On December 1, 2009, Plaintiff went to a doctor's office for the purpose of "secur[ing] [her] release." *Id.* ¶ 20. The doctor wrote a note in support of Plaintiff's request for an extension of medical leave until December 28, 2009, and told Plaintiff that he would fax this information to Rowena D'Souza at the College. *Id.* Later that day, Yanira Ruiz, Espinosa's administrative assistant, sent Plaintiff an e-mail requesting her presence at a December 9 meeting with Espinosa related to the investigation.[4] *Id.* ¶ 21; Doc. No. 1-19. Plaintiff responded to Ruiz that her disability leave had been extended through December 28. *Id.* Plaintiff subsequently sought verification of the College's receipt of her extension, and D'Souza replied that her doctor's note

---

[4] Plaintiff occasionally refers to Espinosa as "Miller" or "Sarah Miller." For the sake of clarity, the Court will use Espinosa, the name listed on Plaintiff's Complaint and Amended Complaint.

was received. Doc. No. 1-20. In two separate e-mails dated December 1, D'Souza told Plaintiff that she was expected to attend the December 2 appointment with Dr. Feister and that Plaintiff was required to sign the form consenting to the release of information to the College. *Id.*

On December 2, 2009, Ruiz and D'Souza left three voicemails for Plaintiff regarding the appointment with Dr. Feister and the pending investigation. Doc. No. 1 ¶ 23. The same day, Lawyer sent Plaintiff another letter stating that Plaintiff had failed to show for the appointment with Dr. Feister and had yet to sign the form consenting to the release of information to the College. *Id.* ¶ 24; Doc. No. 1-21. The letter also informed Plaintiff that continued insubordination would lead to disciplinary action, including possible termination. *Id.* The letter confirmed receipt of Plaintiff's request for extended medical leave, but noted that such a request had not yet been approved. *Id.* Lawyer also told Plaintiff that the College would set up another appointment with Dr. Feister. *Id.*[5]

The College ultimately granted Plaintiff's request for an extension of medical leave until December 28, 2009. Doc. No. 1 ¶ 14; Doc. No. 1-15. However, following the expiration of her medical leave, Plaintiff was placed on administrative leave pending the outcome of the investigation. *Id.* On January 5, 2010, Plaintiff e-mailed Lawyer and D'Souza to inform them that she was "released to return to work." Doc. No. 1 ¶ 14; Doc. No. 1-11. Espinosa responded to Plaintiff's e-mail eighteen minutes later, informing her that she was still on administrative leave pending the outcome of the investigation, that she was required to attend a meeting on January 6 and to bring the fully executed medical release form, and that she would be considered insubordinate and absent without leave if she failed to comply with these directives. Doc. No. 1-12. Later that afternoon, Plaintiff e-mailed Espinosa and several other individual Defendants

---

[5] It is not clear from the record before the Court whether another appointment with Dr. Feister was set up. However, Plaintiff does not appear to dispute the fact that she never met with Dr. Feister and never signed the form consenting to the release of information.

informing them that she would not provide consent to the release of medical information, but that she would attend the January 6 meeting. *Id.*

Plaintiff attended the January 6 meeting at the Rockville Campus with Espinosa and Jacia Smith. Doc. No. 1 ¶ 15. Espinosa told Plaintiff that an investigation into the October 7 letter was still required because Plaintiff had been absent on medical leave, and that Plaintiff would have to consent to the release of medical information. *Id.* Plaintiff reiterated that she would not sign the release. *Id.* Espinosa allegedly cursed under her breath and told Plaintiff she would be considered "insubordinate and AWOL" and that termination proceedings would commence. *Id.*

The College permitted Plaintiff to remain on administrative leave for an additional seven days. *Id.* ¶ 16. On January 13, 2010, Vicki Duggan, Deputy CIO for the Office of Information Technology, wrote Lawyer a letter in which she recommended Plaintiff's termination for failure to follow the College's directives over the previous weeks. *Id.*; Doc. No. 1-15. On February 2, 2010, Lawyer wrote Plaintiff to inform her that she would be terminated effective February 12, 2010. Doc. No. 1 ¶ 16; Doc. No. 1-16.

Plaintiff insists that despite the contents of the College's communications, the College never investigated her performance or the allegations she made in the October 7 letter. Doc. No. 1 ¶ 17. She also claims that failure to investigate the October 7 letter, which requested a transfer to another campus due to safety concerns, contributed to the assault of a young lady at the Takoma Park/Silver Spring campus on January 26, 2010. *Id.* Plaintiff alleges that following the rape, the College transmitted spyware to her home computer in an attempt to inhibit her from viewing e-mails about the rape, and that she was also denied access to the College's security office. *Id.* ¶ 18. Plaintiff also alleges that in the weeks following her termination, Defendants attempted to cover up "the illegal separation of resources," "planted" the Performance Review in the mail, and

7

attempted to deprive her of her mail and prevent her from recognizing her causes of action. *Id.* ¶¶ 28-30.

## II.  STANDARD OF REVIEW

The purpose of a motion to dismiss under Rule 12(b)(6) is "to test the sufficiency of [the] complaint." *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). Except in certain specified cases, the complaint need only satisfy Rule 8(a) of the Federal Rules of Civil Procedure, which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In resolving a motion to dismiss, the Court should proceed in two steps. First, the Court should determine which allegations in the Complaint are factual allegations entitled to deference, and which are mere legal conclusions that receive no deference. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678. Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679.

In its determination, the Court must "accept the well-pleaded allegations of the complaint as true," *Albright v. Oliver*, 510 U.S. 266, 268 (1994), and "must construe factual allegations in the light most favorable to the plaintiff," *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999). The Court should not, however, accept unsupported legal allegations, *Revene v. Charles Cnty. Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), "legal conclusion[s] couched as . . . factual allegation[s]," *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters of Norfolk v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979). "Factual allegations must be enough to raise a right to

8

relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555.

Complaints filed by *pro se* plaintiffs are "to be liberally construed . . . and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus,* 551 U.S. 89, 94 (2007) (citations omitted) (internal quotations omitted). However, "even a *pro se* complaint must meet a minimum threshold of plausibility." *Hawkins v. Hairston*, No. 12-cv-1366-JKB, 2012 WL 5503839, at *2 (D. Md. Nov. 8, 2012).

## III. ANALYSIS

Plaintiff's Amended Complaint states four causes of action against Defendants: (I) "Breach of Duty, The American's with Disability Act of 1990"; (II) "Intentional Violation of Family Medical Leave Act"; (III) "Fraud and Fraudulent Misrepresentation"; and (IV) "Breach of Contract, Wrongful Termination." The Court will analyze each of these claims in turn.

### A. Count I: Americans with Disabilities Act (ADA)

Plaintiff claims that Defendants illegally placed her medical history into her personnel file in violation of the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. §§ 12101 *et seq.* Doc. No. 1. ¶¶ 9, 30. Plaintiff also states in her Opposition to Defendants' Motion to Dismiss that she was "disabled" as a result of foot surgery and because there was a record of psychiatric history in her personnel file. Doc. No. 34 at 31.

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Prior to filing suit alleging violations of the ADA, a plaintiff must first exhaust administrative remedies. *Snead v. Bd. of Educ. of Prince George's Cnty.*, 815 F. Supp. 2d. 889,

894 (D. Md. 2011). The ADA's exhaustion requirements are identical to those applicable to claims brought under Title VII. *See* 42 U.S.C. § 12117. "'Only those discrimination claims stated in the initial charge [filed with a federal or local human relations commission], those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained' in a subsequent lawsuit." *Snead*, 815 F. Supp. 2d at 894 (quoting *Evans v. Techs. Applications & Serv. Co.,* 80 F.3d 954, 963 (4th Cir. 1996)). A plaintiff's failure to exhaust administrative remedies deprives the Court of subject matter jurisdiction over the claim. *See Jones v. Calvert Grp., Ltd.*, 551 F.3d 297, 300 (4th Cir. 2009).

Although Defendants' alleged conduct occurred in 2009 and 2010, Plaintiff does not plead that she ever filed a complaint with the EEOC or a state or local agency. She also concedes in her Opposition that she never filed a complaint with any administrative agency. Doc. No. 34 at 28. Plaintiff's explanation for her failure to exhaust administrative remedies is not entirely clear. She claims to have contacted the EEOC in North Carolina, believing at the time that her termination was based on discrimination, but that "over time" she became aware that her case is actually grounded on FMLA violations. *Id.* Plaintiff offers no support, and the Court is not aware of any, which cures Plaintiff's admitted failure to exhaust administrative remedies. Accordingly, Plaintiff's ADA claim will be dismissed.[6]

Plaintiff relies on a variety of other legal theories in Count I, none of which state a plausible cause of action against Defendants. For example, Plaintiff claims that Defendants violated the Computer Crimes Act and her Fourth Amendment right to privacy when they transmitted spyware to her home computer to prevent her from viewing the College's e-mails about the sexual assault of a lady on campus and to inhibit Plaintiff from learning about the details

---

[6] The Court need not address Defendants' remaining arguments that Plaintiff failed to plead the existence of a disability or failed to state a claim against any of the individual Defendants.

of the assault. Doc. No. 1 ¶¶ 18, 30. Even accepting Plaintiff's factual allegations, any alleged criminal violations by Defendants do not give rise to a private civil cause of action. Plaintiff has also failed to articulate any Fourth Amendment claim because she does not allege that any search or seizure occurred. Indeed, Plaintiff's inability to view her employer's e-mails and learn about the sexual assault does not implicate her right to privacy. Plaintiff also claims that Defendants violated her right to privacy by placing her medical history into her personnel file, but cites no legal theory that would give her a cognizable cause of action.[7] Plaintiff alleges, "I believe, and on that basis allege, that after June 15, 2009, Ms. Vivian Lawyer . . . illegally accessed my medical history . . . ." Doc. No. 1 ¶ 9. Such vague, speculative and unsupported allegations cannot survive a motion to dismiss. Finally, Plaintiff's claims in Count I that certain individual Defendants breached their duty by allowing her termination, failing to intervene, and failing to investigate her complaints appear to be derivative of her claims under the ADA and FMLA and her breach of contract claims, which will be dismissed for the reasons discussed herein.

B.   Count II: Family and Medical Leave Act (FMLA)

Plaintiff alleges in Count II that Espinosa, acting under the authority of Montgomery College, denied Plaintiff's "entitlement to be restored to [her] previous position of employment that [she] held when the leave commenced or to restore [her] to an equivalent position with equivalent employment benefits, pay, and other terms of condition of employment." Doc. No. 1 ¶ 31. Plaintiff also alleges that Defendants engaged in "numerous interfering contacts" directed at her while she was on leave that were "designed to defraud [her] of [her] chose in action." *Id.*

Under the Family and Medical Leave Act of 1993 (FMLA), 29 U.S.C. §§ 2601 *et seq.*, "an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period

---

[7] Plaintiff cites 5 C.F.R. § 2504.6, but this is a federal regulation applying to Office of Personnel Management medical records, and has no applicability to this case.

. . . [b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). The FMLA makes it unlawful for any employer "to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter." *Id.* § 2615(a)(1). It is also unlawful "to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter." *Id.* § 2615(a)(2). A plaintiff may bring an interference claim under the first prohibition and a retaliation claim under the second prohibition. *See Sills v. BFI Waste Servs., LLC*, No. RDB-11-3099, 2013 WL 812011, at *5 (D. Md. Mar. 1, 2013).

"Under the FMLA, an interference claim asserts that the employer failed to restore the employee to his or her previously held position." *Mercer v. Arc of Prince George's Cnty.*, No. DKC 12-0306, 2013 WL 451814, at *2 (D. Md. Feb. 5, 2013). At the end of FMLA leave, the employee "has to the right to be restored to the position, or its equivalent, that he or she held prior to taking leave." *Reilly v. Revlon*, 620 F. Supp. 2d. 524, 534 (S.D.N.Y. 2009) (citing 29 U.S.C. § 2614(a)(1)). The Fourth Circuit has held that § 2614(a) only provides employees with a "limited right to restoration to [her] previous employment position. In particular, an employer can avoid liability under the FMLA if it can prove that it would not have retained an employee had the employee not been on FMLA leave." *Yashenko v. Harrah's NC Casino Co., LLC*, 446 F.3d 541, 547 (4th Cir. 2006) (citations omitted) (internal quotations omitted).

The documents attached to Plaintiff's pleadings demonstrate that the College's decision not to restore Plaintiff to her previous position was entirely unrelated to her FMLA leave. On or about October 7, 2009, Plaintiff sent a letter to the College stating that her supervisor Lee France "wanted to do [Plaintiff] harm; has an obsession to get her; and insinuated that he may attempt to murder her." Doc. No. 1-15. Plaintiff was away from work on medical leave from October 21, 2009 through December 28, 2009, and then on administrative leave into January 2010. During

12

that time, Defendants sent Plaintiff a series of communications regarding her allegations against France and the need to conduct an investigation, informed Plaintiff that she would have to submit to a medical examination and consent to the release of information as part of the investigation, and warned her that failure to comply would be regarded as insubordination. Doc. Nos. 1-9, 1-18, 1-19, 1-20, and 1-21. Plaintiff repeatedly refused to comply with her employer's directives regarding the medical examination. The College ultimately determined that Plaintiff was insubordinate and had effectively abandoned her position, and therefore recommended her for termination in January 2010 and fired her in February 2010. Doc. Nos. 1-15, 1-16. Accordingly, Plaintiff has failed to plead any plausible connection between her medical leave and the College's decision not to restore her to her previous position. Plaintiff's exhibits overcome her speculative and conclusory allegations that Defendants engaged in evil and malicious plots to deprive her of her FMLA entitlement and to set her up for wrongful termination. *See Fare Deals Ltd. v. World Choice Travel.com, Inc.*, 180 F. Supp. 2d 678, 683 (D. Md. 2001) (citing *Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991)) ("When the bare allegations of the complaint conflict with any exhibits or other documents, whether attached or adopted by reference, the exhibits or documents prevail."); *accord Hosack v. Utopian Wireless Corp.*, DKC 11-0420, 2011 WL 1743297, at *5 (D. Md. May 6, 2011) ("[A] complaint's unsupported allegation may be overcome on a motion to dismiss by relevant exhibits. Similarly, when a complaint contains inconsistent and self-contradictory statements, it fails to state a claim.").

For similar reasons, Plaintiff has failed to plead a plausible claim for retaliation under the FMLA. FMLA claims based on a retaliation theory are "analogous" to those derived under title VII. *Yashenko*, 446 F.3d at 550-51. Accordingly, Plaintiff must make a prima facie showing "that [s]he engaged in protected activity, that the employer took adverse action against h[er], and that the adverse action was causally connected to the plaintiff's protected activity." *Id.* at 551 (quoting

13

*Cline v. Wal-Mart Stores, Inc.*, 144 F.3d 294, 301 (4th Cir. 1998)). As discussed above, Plaintiff's pleadings and attached exhibits fail to establish a plausible causal connection between her assertion of rights under the FMLA and her eventual termination. Therefore, any retaliation claim fails as a matter of law.

Plaintiff's allegation that she was subjected to "numerous interfering contacts" while she was on leave also fails to state a plausible FMLA claim. During her period of medical leave, which lasted approximately ten weeks, Plaintiff appears to have received four letters from Lawyer, one e-mail from Ruiz, three e-mails from D'Souza, and three voicemails from D'Souza and Ruiz.[8] These communications concerned Plaintiff's allegations against France, her placement on leave, and the need for her to meet with a physician as part of her employer's investigation. The occasional and brief nature of these communications over a ten-week period did not deny Plaintiff the FMLA benefits to which she was entitled. In *Reilly*, for example, the court held that "[f]ielding occasional calls about one's job while on leave is a professional courtesy that does not abrogate or interfere with the exercise of an employee's FMLA rights. When limited to the scope of passing on institutional knowledge to new staff, or providing closure on completed assignments, employers do not violate the FMLA by making such calls." *Reilly*, 620 F. Supp. 2d at 537. In this case, Defendants' communications were brief, infrequent, and requested that Plaintiff take steps to assist in an investigation that was initiated as a result of Plaintiff's complaints about a supervisor. Plaintiff was not denied her entitlement to FMLA leave based on these occasional communications.[9] Accordingly, Plaintiff has failed to state a plausible claim under the FMLA, and Count II of her Amended Complaint will be dismissed.

---

[8] Plaintiff labels all of these communications as "interfering contacts," but at least one of the e-mails she received from D'Souza was in response to an e-mail sent by Plaintiff that requested confirmation that her medical leave would be extended. *See* Doc. No. 1-20.

[9] Plaintiff's allegations of interference are particularly difficult to accept given that the College granted her request for an *extension* of medical leave in December 2009. Doc. No. 1 ¶ 14; Doc. No. 1-15.

C.  Count III: Fraud and Fraudulent Misrepresentation

In Count III, Plaintiff alleges that Defendants are liable for fraud and fraudulent misrepresentation based in large part on alleged forgery and false statements that led to her termination and concealed her causes of action. Doc. No. 1 ¶ 31.[10] Under the Maryland Local Government Tort Claims Act (LGTCA), "an action for unliquidated damages may not be brought against a local government or its employees unless the notice of the claim required by this section is given within 180 days after the injury." Md. Code, Cts. & Jud. Proc. § 5-304(b)(1). The LGTCA defines "local government" to include chartered counties and "[a] community college or board of trustees for a community college." *Id.* §§ 5-301(d)(1), (9). The LGTCA notice provision is a condition precedent to maintaining a claim for unliquidated damages against a local government and its employees, and claimants must affirmatively plead that they satisfied the precondition to suit. *Hansen v. City of Laurel*, 25 A.3d 122, 130-32 (Md. 2011). Plaintiff's Amended Complaint contains no allegation that she complied with the LGTCA notice provision. Indeed, Plaintiff candidly acknowledges in her Opposition brief that she failed to provide such notice. *See* Doc. No. 34 at 37.

Plaintiff appears to argue that applying the law to her circumstances is unfair or a denial of due process. *Id.* at 37-39. Section 5-304(d) of the LGTCA provides that the court may upon motion and "for good cause shown" entertain the suit even though notice was not given. Md. Code, Cts. & Jud. Proc. § 5-304(d). It is within the trial court's discretion to determine whether good cause exists to waive the LGTCA notice requirement. *See Cullen v. Somerset Cnty.*, No. WMN-10-0055, 2010 WL 2132794, at *5 (D. Md. May 25, 2010) (citing *Moore v. Norouzi*, 807 A.2d 632, 641 (Md. 2002)). The test for whether good cause exists is "whether the claimant

---

[10] Plaintiff cites 18 U.S.C. § 1001 in her original Complaint. However, this is a federal criminal statute which does not give rise to a private, civil cause of action. Accordingly, the Court interprets Count III as one brought under Maryland tort law.

15

prosecuted his claim with that degree of diligence that an ordinarily prudent person would have exercised under the same or similar circumstances." *Heron v. Strader*, 761 A.2d 56, 63 (Md. 2000) (citations omitted). Plaintiff asserts without explanation that she was not aware of her claims within 180 days of being injured. However, all of the underlying facts in Plaintiff's Amended Complaint occurred in 2009 and 2010, and Plaintiff does not offer specific support for why she sat on her claims until December 2012. Furthermore, this is not a case like *Prince George's County v. Longtin*, cited by Plaintiff, where the Court of Appeals held that the LGTCA notice requirement began to run on an incarcerated plaintiff's claims relating to false arrest and imprisonment upon his release from prison. *See* 19 A.3d 859, 877-78 (Md. 2011). Those circumstances are simply not present in Plaintiff's case. Accordingly, Plaintiff's fraud and fraudulent misrepresentation claims will be dismissed.

D. Count IV: Breach of Contract and Wrongful Termination

In Count IV, Plaintiff alleges that the College terminated Plaintiff "without just cause and in violation of the [FMLA]." Doc. No. 1 ¶ 32. Plaintiff essentially acknowledges in her Opposition brief that these claims are duplicative of her FMLA claims. Doc. No. 34 at 39. For the same reasons that Plaintiff's Amended Complaint fails to state a plausible cause of action under the FMLA, it also fails to state a plausible claim for breach of contract or wrongful termination.[11] Accordingly, these claims will be dismissed.

E. Remaining Issues

Plaintiff has not requested leave to amend in the event the Court dismisses the Amended Complaint. However, the Court concludes that amendment would be futile in this case, as

---

[11] To the extent Plaintiff intended to state a tort claim for wrongful and abusive discharge, such a claim would also have to be dismissed based upon Plaintiff's admitted failure to comply with the LGTCA. *See Sabrosso-Rennick v. Mayor & City Council of Balt.*, No. 12-cv-2456-JKB, 2012 WL 6719648, at *2-3 (D. Md. Dec. 21, 2012).

Plaintiff's initial pleadings demonstrate that she is unable to set forth a plausible claim for relief under the ADA, FMLA, or any other asserted legal theory.

Plaintiff also has several pending motions in this case. Three of Plaintiff's motions request that Defendants' case be "dismissed" or that default judgment or summary judgment be entered against Defendants on account of their alleged "perjury" and related, objectionable conduct in this action. Doc. Nos. 34, 42, and 52. There is no merit to any of Plaintiff's arguments, and these motions will be denied.[12]

Plaintiff has also filed a Motion for Continuance Based on Newly Discovered Documentary Evidence, and a "Motion to Dismiss" Defendants' case based on that evidence. Doc. Nos. 56-57. In these Motions, Plaintiff reiterates her accusations of perjury and argues that she has evidence that the College never set up an appointment with Dr. Feister for a medical examination. Plaintiff's purported evidence does not demonstrate any perjury on the part of Defendants, nor does it change the Court's analysis with respect to Defendants' Motion to Dismiss. Accordingly, these motions and all the relief requested therein will be denied.[13]

## IV.  CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss Plaintiff's Amended Complaint will be GRANTED. A separate Order follows.

| | |
|---|---|
|   August 16, 2013   |       /s/       |
| Date | Alexander Williams, Jr. |
| | United States District Judge |

---

[12] Indeed, the Court previously considered Plaintiff's arguments regarding Defendants' alleged perjury, and held that there was no basis for her claims. *See* Doc. No. 41. The Court also previously denied Plaintiff's request that default judgment be entered against Defendants. *See* Doc. Nos. 32.

[13] Plaintiff also filed a Motion to Correct an error on page 14 of her Opposition brief, Doc. No. 40, which the Court will grant.